# SUPREME COURT.

## WILLIAM BROWN, appellant, agt. LOUISA M. CHERRY, respondent.

Where the grantee of lands holds the legal estate in the premises, and there is nothing in the conveyance to him which would give notice to any one that he holds it only *in trust* for another, there can be no doubt that a foreclosure and sale by advertisement. pursuant to the statute, of a mortgage, given by him without the knowledge or consent of the *cestui que truet,* would vest in a *bona fide* purchaser, under the foreclosure sale, without notice of the trust, a title which would cut off the equity of the *cestui que trust* although no notice of the proceedings were served on him.

But the trustee in such case would be liable to the *cestui que trust* for the loss he sustained by his wrongful act in mortgaging the premises; and it would be no answer to such alleged liability that he supposed he was acting for the *cestui que trust* when he executed the mortgage.

Therefore, for this reason, the trustee has such a *pecuniary interest* in the question, as wi'l authorize him to bring an action, in his own name, to restrain the foreclosure of such mortgage.

The trustee is also "*a trustee of an express trust,*" and can sue without joining with him the person for whose benefit the action is prosecuted *(Code* § 113). For he not only held the legal title to the land in his own name, for the benefit of another, but the very mortgage in question was executed by him in his own name, not for his own benefit, but for the benefit, as he supposed, of his *cestui que trust.*

The Code (§ 113) says, that "a trustee of an express trust, within the meaning of this section, shall be construed to include *a person with whom, or in whose name, a contract is made for the benefit of another.*"

It is error to dismiss the plaintiff's complaint on the ground that the *cestui que trust* was not made a party. It is enough that he was entitled to commence the action alone, or in conjunction with the *cestui que trust.* If he has a standing in court in either way upon the pleadings, the complaint cannot be dismissed.

*Fifth District, General Term, January,* 1870.

*Before* FOSTER, MORGAN *and* MULLIN, *Justices.*

APPEAL from a judgment on the report of a referee, dismissing the plaintiff's complaint.

The action was brought to restrain the defendant from foreclosing a mortgage, executed by the plaintiff, of which she was the holder.

It appeared on the trial that in 1853, one, Mrs. Stewart, was the owner of personal property which had been transferred to her by her husband, before their marriage; that she sold it to John Langdon, and that Langdon, in consideration thereof, transferred the title to the real estate in question to the plaintiff Brown by deed absolute in form, and without the then knowledge of Brown, which deed from Langdon to Brown was intended for the benefit of Mrs. Stewart; she being aware that the conveyance was to be made to Brown, but unaware of the form in which the conveyance was to be made.

On the 1st of May, 1858, Brown executed and delivered to Mrs. Stewart his promissory note for three hundred dollars, for the premises, payable at ninety days; but he never paid it, and was never called upon to do so. He never entered into the actual possession of the premises, and had nothing to do with the care or use of them, and considered that he held them for the benefit of Mrs. Stewart.

On the 29th of December, 1857, Brown executed a mortgage on the premises to one Chauncey M. Cherry, to secure the payment to him of the sum of $1,500 in five years from the 13th of May, 1858, with annual interest, and without any bond collateral thereto, or covenant for the payment by him.

At the time he executed the mortgage, he was requested to do so by Mr. Stewart, the husband of Mrs. Stewart; and he supposed he executed it for the parties beneficially interested in the premises, but he received no consideration for the mortgage whatever; and the proof showed that Mrs. Stewart did not authorize the giving of the mortgage, and did not know of its execution until a long time afterwards; and there was no proof that there was any consideration whatever for the execution of it. The referee, however, refused to find "That Mrs. Stewart did not direct or consent that the mortgage be given, and received no consideration whatever therefor, and did not know of the same until some

months or years after it was given;" "on the ground that it was not necessary to a decision of the case." To which the plaintiff's counsel excepted. It further appeared that during all the time after the deed was executed from Langdon to Brown, Alpheus Stewart, the husband of Mrs. Stewart, had the possession and charge of the premises. The referee also found "that the plaintiff claimed to prosecute the action for the benefit of Mrs. Caroline Stewart, wife of Alpheus Stewart." But no such claim was made in the complaint, nor does it so appear from the case, further than by the facts above stated.

On the 6th of August, 1861, Chauncey W. Cherry assigned the mortgage to Ira Hopkins, who by his last will and testament bequeathed it to his daughter, the defendant; and after his death, and at the time of the commencement of the action, she was proceeding to foreclose it by advertisement, pursuant to the statute, for the whole amount of the principal and for the whole amount of interest thereon, none having ever been demanded or paid.

There was no objection taken that any other person or persons were not joined with the plaintiff as parties to the action, either by demurrer or answer.

At the close of the trial, the plaintiff's counsel asked the referee to find and decide: "1st. That the plaintiff having executed and delivered the mortgage in question to Cherry, the plaintiff can maintain this action to set it aside for want of consideration, without joining the person having the equitable interest in the lands so mortgaged. 2d. That the objection of non-joinder of said person as a party plaintiff not having been taken, either by demurrer or answer, is waived."

The referee refused so to find. To which the plaintiff's counsel duly and severally excepted; and the referee dismissed the complaint "on the ground that the plaintiff was not the real party in interest, nor the trustee of an express trust." To which decision the plaintiff's counsel duly

Brown agt. Cherry.

excepted. Judgment was entered for the defendant pursuant to the report, and the plaintiff appealed.

HUNT & GREEN, *for appellant,*
HENRY RIEGEL, *for respondent.*

*By the Court,* FOSTER, J.—We must assume for the purpose of deciding the questions before us, not only as the referee has found, that the plaintiff received no consideration for the execution of the mortgage, but also, that it was without consideration to Mrs. Stewart. For if that would give the plaintiff any more right to bring this action, than if she did receive a consideration, it was the duty of the referee to find and declare how that fact was, instead of refusing to find it, on the ground that it was immaterial.

But upon the supposition that the plaintiff was not a trustee of an express trust, was the fact of such want of consideration to her, immaterial.

Upon the proofs of the case the plaintiff, although he supposed he was acting for the benefit of Mrs. Stewart in executing the mortgage, executed it in fact without her knowledge or authority, and without consideration to her. He held the legal estate in the premises, and there was nothing in the conveyance to him, which would give notice to any one, that he held it only in trust; and there can be no doubt I think, that a foreclosure against him by advertisement pursuant to the statute, if the sale were regular and completed to a purchaser for value without notice, would cut off the equity of Mrs. Stewart, although no notice of the proceeding were served upon her.

Great injustice would ensue if parties were allowed to hold the beneficial interest in land under deeds, to other persons, purporting to be in fee simple, against incumbrances placed upon it by the grantee in favor of persons who had no notice of the secret trust. And equal injustice, if upon the statutory foreclosure of any mortgage executed by the

secret trustee in his own name, such trust could prevail against a purchaser at the mortgage sale, in good faith and for valuable consideration. And it is clear from the language of the statute that upon the foreclosure in question, no notice to Mrs. Stewart was necessary. (2 *R. S.*, 4*th Ed.*, 778, *sec.*, 3 *sub.*, 4).

Suppose then the plaintiff had not commenced this action to restrain the statutory foreclosure, and a sale of the premises regular in form, had been made to a purchaser for valuable consideration and without notice; would not the plaintiff be liable to Mrs. Stewart for the loss she sustained by his wrongful mortgaging of the premises? And would it be any answer to such alleged liability, that he honestly supposed he was acting for her when he executed it? I think not, and that he had such a pecuniary interest in the question, for that reason, as authorized him to bring the action, and the referee erred in refusing to find that the mortgage was executed without the knowledge of Mrs. Stewart, and without consideration to her.

Again, was the referee right in holding that the plaintiff was not the " trustee of an express trust?" It is claimed by the counsel for the defendant that the trust in question was a resulting trust instead of an express trust. But I think, without sufficient ground for such claim; a resulting trust hardly ever arises from acts which show that the trustee and *cestui que trust* concur in the creation of it; and it is well illustrated by the case of a purchase by one in his own name, of property with the funds which he has in his hands belonging to another, to be applied to some other purpose; or where he has such funds in his hands for the purchase of a particular piece of real estate for and in the name of his principal, and he in violation of his instructions, makes the purchase, and takes the absolute legal title to himself. In such cases there is a resulting trust in favor of the person whose funds have been used by the grantee; such was not the case here. The principal

knew that the deed was to be taken in the name of Brown, though she did not know what the form of the deed would be.

It is what at common law was an implied trust, and it is technically so still, and it must be conceded that it was not an express trust at common law.

"Express trusts are those which are created in express terms, in the deed, writing or will," "while implied trusts are those, which without being expressed, are deducible from the nature of the transaction, as matters of intent; or which are superinduced upon the transaction, by operation of law, as matters of equity, independently of the particular intention of the parties." (*Bouvier's Law Dic., Title* "*Trust*,")

Neither was it what is termed an express trust in the Revised Statutes (1 *Statutes at Large,* 768 *sec.,* 55 *et seq*).

Nor is it to my mind certain that it was so according to section 113 of the Code of Procedure, as originally enacted; which was perhaps intended to embrace such as were express trusts at the common law and by the several statutes, and was as follows: "An executor or administrator, a *trustee of an express trust,* or a person expressly authorized by statute, may sue without joining with him, the person for whose benefit the action is prosecuted." And yet, upon the authority of *Grinnell* agt. *Schmidt, infra,* decided in May 1850, there would seem to be no doubt that it was.

In 1851 section 113 of the Code was amended, by adding at the end of it, the following words: "A trustee of an express trust, within the meaning of this section, shall be construed to include *a person with whom or in whose name a contract is made for the benefit of another.*"

Now the plaintiff not only held the legal title to the land in his own name, for the benefit of another, but the very mortgage in question was executed by him, in his own name, not for his own benefit, but for the benefit as he

supposed, of his *cestui que trust*, and it seems to me that this case comes not only within the spirit of the amendment of 1851, but within its letter. "A factor or other mercantile agent, who contracts in his own name, in behalf of his principal, is a trustee of an express trust, within the meaning of section 113 of the Code, and is the proper party to bring an action upon the contract, (*Grinnell* agt. *Schmidt*, 2 *Sandf. Sup.*, 706,) and the court (*at page* 709,) says: "It has been generally supposed that the words, express trust, in this section, refer to trusts of land authorized by the revised statutes, and which are in the statutes themselves termed express trusts, and to them alone. It is not necessary, however, to give to the words this resticted meaning. They are capable of a more extensive signification, so as to include all contracts in which one person acts in trust for or in behalf of another. Of this kind, are contracts made by factors and other mercantile agents, who act in their own names, but for the benefit of and without disclosing their principals."

And it would seem that the amendment of 1851, was intended to give the original section in express terms, the same construction which had been given to it by the superior court.

In *Rowland* agt. *Phalen*, ( 1 *Bosw.*, 43, 1857,) it was decided that as to a contract made by a party of the first part, assuming to act on behalf of others not named, and to bind himself personally, to accomplish certain results beneficial to the parties of the second part, in consideration of their agreement to pay him, for the benefit of those for whom he acts, the party of the first part is a "*trustee* of an express trust," within the meaning of section 113, and may sue in his own name, without joining with him those for whose immediate benefit the action is prosecuted.

It has also been held that a mere agent, who contracts in his own name and without disclosing the name of his principal, is *a trustee of an express trust*, and may maintain an

action upon the contract in his name without joining his principal, and it is also held that in such case, the principal also, has the right to sue without joining the agent with him. (*Morgan* agt. *Reid*, 7 *Abb.*, 215 ; *The Union India Rubber Company* agt. *Tomlinson*, 1 *E. D. Smith*, 380, *and Van Lien* agt. *Byrnes*, 1 *Hilt.*, 133).

An auctioneer who sells goods in his own name, to a third person, is the trustee of an express trust within the meaning of the section in question, and may sue upon the contract, without an assignment of the cause of action. And he is not bound to show that he was a licensed auctioneer. He sues under the statute as a "trustee of an express trust," having made a sale of goods for the benefit of another. (*Bogart* agt. *O'Regan*, 1 *E. D., Smith*, 591).

In *Minturn* agt. *Main*, (3 *Selden*, 220). It was decided that a public auctioneer who sells goods for another, may maintain an action for the price, although he has received his advances and commissions deed, and has no interest in the property or its proceeds. And the court in its opinion at page 224, says: There are two considerations which are conclusive against the defendant, one is that an auctioneer has such a special property or interest in the subject matter of the sale that he may sue in his own name, unless the principal or real owner elect to bring the action in his own name. (*Chitty on Contracts*, 185). And it is unnecessary to prove that he has a special property or interest, for that flows as a matter of course, from his position as an auctioneer; and it is only where a party acts as a mere agent or servant that a special beneficial interest, must be proved to maintain an action or may be disproved to defeat it.

The other is that the defendant is estopped from denying that he contracted directly with the plaintiffs, by receiving the goods from them, giving his receipts to them, as if on a purchase made by him of them, and by his subsequent recognition of the whole transaction, as a sale directly from them to him. He treated the transaction throughout

as a sale from them to him, until he obtained possession of the property, and appropriated it to his own use, and it no longer lies in his mouth to refuse that character to it." These remarks are all applicable to this case. In that case the auctioneers had no possible interest in the proceeds of the sale, except it be that they were answerable over to their principal therefor. They had received their charges and commissions, and yet they were held to be entitled to sue, because they had an interest in the subject matter of the suit; certainly if I am right in supposing that the plaintiff in this case would be answerable over to Mrs. Stewart, if he had permitted the unauthorized mortgage to be foreclosed, he has as much interest in this action as the auctioneers had in that; and the estoppel upon the defendant here is quite as strong; for the defendant or the mortgagee, under whom she claims the mortgage, contracted with the plaintiff as the party in interest, took the mortgage from him in his own name, and afterwards instead of proceeding to foreclose it by action, he did so by advertisement, and treated the plaintiff as the only person who had any title to the premises. He is foreclosing against him as the party interested, and he should not be allowed when it turns out on the trial of the action, which was commenced by the plaintiff to stop his proceeding, to turn round and insist that his mortgagor has no interest in the question, whether he be a trustee of an express trust or not.

But I think, upon the authority of the case of *Considerant* agt. *Birsbane* (22 *N. Y. Rep.*, 389,) there can be no question that the plaintiff was a trustee of an express trust within the meaning of section 113 as it now stands. In that case, the plaintiff was the executive agent of a foreign corporation and authorized to receive subscriptions to its capital stock; the defendant subcribed for and received stock of the company from the plaintiff to the amount of $10,000, and he executed two promissory notes and delivered them to the plaintiff, by each of which he promised to

pay to *him*, "as executive agent of the company," the sum of $5,000. The plaintiff sued upon the notes in the superior court of New York, and in his complaint the notes were set forth at length. The defendant demurred to the complaint, assigning as the ground that it did not state facts sufficient to constitute a cause of action. The superior court, at general term, sustained the demurrer on the ground that the action could not be maintained by the plaintiff. The plaintiff appealed, and the court of appeals reversed the judgment.

In declaring the prevailing opinion, (*at p.* 394, *&c.,*) WRIGHT, J., says: "Prior to the Code, therefore, I am of the opinion that the plaintiff might have maintained an action on the express contracts set out in the complaint for the benefit of his principals, having a legal interest in them by way of trust. The promise being to him in writing, for the benefit of another, he would have been deemed the party with whom, or in whose name, the contracts were made, and in whose name alone the promise could be enforced in a court of law. The Code, however, abrogated the common law rule that the right of action followed the legal title, and made the beneficial interest the sole test of the right. In adopting the latter rule, it was easily to be seen that there was a class of cases in which it would be extremely prejudicial to the remedy, as well as difficult of application, viz.: the case of executors, persons authorized by statute to sue, and trustees of an express trust. To obviate this, it was specially provided that in these cases the executory, or statutory party, or trustee of an express trust, might sue without joining with him the person for whose benefit the action was prosecuted (*Code,* § 113). The term 'trustee of an express trust,' had, however, acquired a technical and statutory meaning. Express trusts, at least up to the adoption of the Revised Statutes, were defined to be trusts created by the direct and positive acts of the parties by some writing, or deed, or will; and the Revised

Statutes had abolished all express trusts, except as therein enumerated, which related to land. If the 113th section of the Code was to be confined and limited to those enumerated as express trusts, the practical inconvenience arising from making the beneficial interest the sole test of the right to sue, and which that section was intended to obviate, would continue to exist in a large class of formal and informal trusts. Accordingly, in 1851, the section was amended by adding the provision that 'a trustee of an express trust, within the meaning of the section, shall be construed to include a person with whom, or in whose name, a contract is made for the benefit of another:' It is to be observed that there is no attempt to define the meaning of the term 'trustee of an express trust' in its general sense; but the statutory declaration is, that these words 'shall be construed to *include* a person with whom, or in whose name, a *contract* is made for the benefit of another.' The counsel for the respondent insists that the sole intention of the legislature in amending the section, was to remove a doubt that has been expressed, whether a factor or other agent, who had at common law a right of action on a contract made for the benefit of his principal, (by reason of his legal interest in the contract) was by the Code deprived of that right. But no such limited intention can be inferred from the words of the statute. Indeed, it is only by a liberal construction of the section that the case of a contract by a factor (an individual contract) can be brought within it at all. It is intended, manifestly, to embrace not only formal trusts, declared by deed *inter partes*, but all cases in which a person acting in behalf of a third party, enters into a written express contract with another, either in his individual name, without description, or in his own name, expressly in trust for, or on behalf of another, by whatever form of expression such trust may be declared. It includes not only a person with whom, but one in whose name, a contract is made for the benefit of another." These prin-

ciples were not controverted in the dissenting opinion in the case, but it is contended that the phraseology of the notes was such that in reality it was a promise to pay to the principal, and did not import on its face a contract to pay it to the plaintiff, either absolutely or as a trustee.

That Mrs. Stewart was not made a party, furnished no good reason for the dismissal of the complaint. It is enough for the purposes of the plaintiff on this appeal, if it appears that he was entitled to commence the action alone, or in conjunction with Mrs. Stewart. If he had a standing in court in either way, upon the pleadings in this case, the complaint could not be dismissed. For if Mrs. Stewart should have been a party plaintiff with him, the defendant if she would raise the question, should have claimed it in her answer, and could not ask a dismissal for that reason on the trial. She could not demur to the complaint, for that contained a good cause of action, and there was no statement in it to show that any one besides the plaintiff had any interest in the controversy. She must, therefore, have claimed the non-joinder, by setting up the facts on which she relied for that purpose and making the claim in the answer, and by not doing so she waived it. (*Code sec.*, 148 ; *Merritt* agt. *Walsh*, 32 *N. Y. Rep.*, 685 ; *Halsey* agt. *Black*, 28 *N. Y.*, 438).

I am clearly of the opinion that the plaintiff had the right to commence the action as he did, and that if the defendant would insist that Mrs. Stewart should have been a party, in order to a full and final disposition of the controversy, she should have taken the proper steps for that purpose ; and if it appeared on the trial that a complete determination of the controversy could not be had without the presence of Mrs. Stewart, the court should have caused her to be brought in, pursuant to section 122 of the Code.

The judgment should be reversed, and a new trial granted, with costs to abide the event.